IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
ELDORADO DIVISION

U. S. DISTRICT COURT
ESTERN DIST. ARKANSAS
F I L E D
DEC 16 1988
CHRIS R. JOHNSON, Clerk
By Jane Cartwright
Deputy Clerk

LARRY MILTON, On Behalf of
Himself and Infants Shanna Milton
and Shana Milton; DR. WILLIE D.
HARRIS, On Behalf of Himself
and Infant MARK NEIL; BOBBIE RAY
CHEEKS, On Behalf of Infant BOBBIE
RAY, JR.; DR. LEE NAYLES, On
Behalf of Himself and Infant
JON NAYLES                                                    PLAINTIFFS

V.                          NO. 88-1142

BILL CLINTON, Governor of the
State of Arkansas; THE STATE
DEPARTMENT OF EDUCATION OF THE
STATE OF ARKANSAS; THE ARKANSAS
STATE BOARD OF EDUCATION; THE
MEMBERS OF THE ARKANSAS STATE BOARD
OF EDUCATION OF ARKANSAS: JEFF
STARLING, EARL LOVE, ROBERT L.
NEWTON, L.D. HARRIS, DR. HARRY
MCDONALD, ALICE L. PRESTON,
ELIANE SCOTT, WALTER TURNBOW and
NANCY WOOD; THE BOARD OF EDUCATION
OF THE CAMDEN, ARKANSAS SCHOOL
DISTRICT NO. 35, a Public Body
Corporate; THE BOARD OF DIRECTORS
OF THE HOUSING AUTHORITY OF THE
CITY OF CAMDEN, ARKANSAS, A Public
Body Corporate; THE CITY OF CAMDEN,
ARKANSAS, A Public Body Corporate;
THE BOARD OF EDUCATION OF THE
HARMONY GROVE, ARKANSAS SCHOOL
DISTRICT, A Public Body Corporate;
and THE CAMDEN, ARKANSAS FAIRVIEW
SCHOOL DISTRICT, A Public Body
Corporate                                                     DEFENDANTS

## COMPLAINT

1. This is an action pursuant to 28 U.S.C. §§ 1331, 1343 and 2201. Relief is sought under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981, 1983 and 2000(d).

2. The plaintiffs are residents of the Camden, Harmony Grove and Fairview School Districts in Ouachita County, Arkansas. They bring this action on behalf of their minor school aged children who are eligible to attend the schools of the district wherein they reside.

3. The defendants are listed in the caption. The Governor of Arkansas through Dr. Ruth Steele, who is the director and/or commissioner of the State Department of Education, is responsible for implementing state law with respect to state educational policies and for otherwise distributing state financial assistance to the various school districts. The Board of Education of the State Department of Education promulgates policy and otherwise oversees the implementation of state law. The defendant members of said board are appointed by the Governor of Arkansas. They are sued individually and in their official capacities.

The Harmony Grove, Camden and Camden Fairview Boards of Education are the entities which operate and manage the public school systems within their respective geographic territories.

The City of Camden, Arkansas is the primary municipal governmental authority within the geographic area of the three school districts. It has the authority, through its zoning and condemnation powers to determine or influence the demographic characteristics of the three school districts sued herein. Its zoning decisions have contributed to the living patterns of pupils in the three districts. The Board

of Directors of the Housing Authority of the City of Camden, Arkansas is comprised of citizens appointed by the City of Camden to implement policies, rules and regulations set by or for the City of Camden by said board. With the concurrence of the City of Camden, it determines the location of public housing within the Camden area.

4. This is an action seeking the consolidation of the three defendant school districts; mandatory injunctive relief which requires the elimination in the three districts as consolidated of all vestiges of racial segregation and discrimination; and a declaratory judgment that (a) the defendants have acted or failed to act in the manner required by law to establish racially nondiscriminatory school systems; and (b) their separate or joint acts or ommissions have contributed to the perpetuation of unlawful vestiges of racial discrimination.

5. The defendants act in concert to deny black children equal educational opportunities. This is seen in their decisions set forth in Paragraphs 6-13, infra. When they do not act in concert, they act independently with the full awareness and expectancy that the segregatory and discriminatory conduct will be condoned if not supported by each other. Because of their liaisons and joint purpose to segregate or at the least to minimize desegregation, the defendants are jointly responsible for establishing, maintaining and perpetuating the existing racially discriminatory school systems.

6. The discriminatory conduct in the form of acts or ommissions is described in part as follows:

   A. Until 1954, Arkansas State law required that public education be offered on racially segregated terms and conditions. Under that arrangement, state financial support of public education, provided through the Arkansas State Department of Education, differed significantly for black and white students.

   B. Between 1954 and 1963, the State of Arkansas engaged in a policy of overt resistance to desegregation by enacting a series of laws for the purpose of delaying, avoiding or evading the desegregation requirements imposed by Brown v. Board of Education, 347 U.S. 483 (1954). The defiance was led by the Governor of Arkansas, at least from 1957 to 1963.

   C. Between 1964 and 1968, the State of Arkansas and the three school districts engaged in overt actions which had the effect of prolonging the implementation of governmentally required school desegregation plans. They included, inter alia, pupil placement legislation and reimbursement of legal costs to school districts which resisted desegregation. Since 1970, the defendants, jointly and in concert, have acted to maintain vestiges of discrimination through a series of acts. Most recently, through certain provisions of the Quality Education Act of 1984, A.C.A. § 6-15-201, et. seq., black children are separated from others of their age for reasons of race by use of placement or discriminatory testing devices. The State Department of Education has conceded the

discriminatory placement effect of the criteria.

7. Further segregated acts engaged in by the State of Arkansas and the Arkansas State Board of Education include, inter alia, the following:

A. The State mandated, financed and maintained a dual public school system until the mid 1960's; and it continues to allow vestiges of that system to remain;

B. Since the mid 1960's, the state has taken no affirmative action to dismantle that dual school system;

C. The state has taken no action to foster racially neutral, non-segregatory school sitings; and

D. The State has encouraged consolidation of school districts for numerous reasons, e.g. quality education, economics and convenience, but has not done so for the purpose of ending or remediating the racial segregation which it required for over a century.

8. Each of the aforesaid acts was engaged in and maintained with specific discriminatory intent.

9. Each of the aforesaid acts have interdistrict, segregative impact within and upon the Camden School District.

10. The segregative acts of the City of Camden and the Camden Housing Authority include the following:

A. The Housing Authority of the City of Camden is authorized to obtain sites for and make placements of low income housing facilities within the City of Camden and extending outside of the Camden City limits up to five miles. It has constructed numerous units of low income housing and

has caused such housing to be located on sites selected on the basis of race. The site decisions have been made after consultation with the other defendants herein and with the United States Department of Urban Development (HUD). The other defendants have either concurred or acquiesed in the siting decisions of the Camden Housing Authority.

  B. The City of Camden has cooperated with the Camden Housing Authority through its zoning decisions and its support with the Department of HUD. The three school districts have cooperated by encouraging black students to either attend schools located near such housing or by, in the case of the Camden District, locating school facilities near or adjacent thereto. The Fairview and Harmony Grove school districts, on information and belief, have either resisted or not encouraged placement of low income public housing in their areas. These housing decisions by the Camden Housing Authority and the other defendants have had the effect of concentrating black population within the boundaries of the Camden School District and the further effect of discouraging continued white population with the boundaries of the Camden School District.

 11. The segregative acts of the Fairview and Harmony Grove School Districts include the following:

  A. Before 1954, Fairview and Harmony Grove maintained segregated schools sytems which provided inadequate inferior and unaccredited schools for blacks. The Camden School District on the other hand, maintained inferior and inadequate schools for blacks but the Camden black

schools were vastly superior to those of Fairview and Harmony Grove. This dual system of segregated schools within those districts has had and has a tendency to cause black students to locate in the Camden District rather than in either Fairview or Harmony Grove Districts. Conversely, that "dual system" has and has had a tendency to encourage white ers, students to locate in Fairview and Harmony Grove rather than in Camden. the employment of a black principal at the former

B. Fairview and Harmony Grove have encouraged white flight from the Camden District. They have done this by a number of methods including, inter alia, permitting interdistrict transfers of white students for racial reasons, word of mouth encouragement of movement by board members, the appointment and employment of all white administrative staff and by informally advertising their predominantly white enrollment.

C. Fairview and Harmony Grove have resisted both the informal and formal efforts of the Camden School District to extend its boundaries to make the Camden boundaries coterminous with the boundaries of the City of Camden as that city has developed. These districts have also refused efforts to consolidate or provide other interdistrict relief of any kind.

D. Fairview and Harmony Grove make student , it assignments on a racially discriminatory basis. They do so through their placement of students pursuant to a "tracking" system and pursuant to discriminatory policies and practices of pupil identification. Black students are, for example,

disproportionately placed into special education courses while white students, for example, are disproportionately placed into enriched or gifted type educational programs.

E.  Fairview and Harmony Grove have a pattern, practice, custom and usage of employing white staff for certain positions such as head coaches, academic teachers, principals and administrators.  The sole exception in this pattern is the employment of a black principal at the former Chidester School which is now consolidated with Fairview.  Chidester consolidated with Fairview in 1986.  (Ironically, the Chidester students at the High School are transported by the defendant State Department of Education and the Fairview District from Chidester to Fairview by passing <u>through</u> the heart of the Camden School District.  As a consequence, black students are disproportionately burdened in busing).

F.  Fairview and Harmony Grove have utilized and utilize the at-large method for the election of school board members to deny blacks representation of their choice on their boards of education.  This denial combined with their staff employment discrimination policy and practice operates to deny black students and their parents any effective opportunity to participate in the decisional process of these districts.

Moreover, when Fairview consolidated with the predominantly black Chidester School District in 1986, it failed to provide the majority black Chidester Board any representation.  The "consolidation" was thus an absorption, a total disregard for the Chidester community.

G.  Fairview and Harmony Grove provide less conducive atmospheres for pupil desegregation. Fairview has, for example, a quota for participation by black students in extra curricular activities.

12.  The Camden School District also has a history of discriminating against black students with respect to school activities, honors and discipline but its record when compared to those of Fairview and Harmony Grove tends to convey the idea that Camden will treat black students more equitably than the other two districts. This fact – relatively greater equity in Camden for black pupils – has a tendency to promote white flight.

13.  On information and belief, the racial composition of the three defendant school districts is: Camden – 70% black and 30% white; Fairview – 25% black and 75% white; Harmony Grove – 25% black and 75% white. Around 1960 the Camden Housing Authority in concert with the other defendants established racially segregated public housing projects, all within the Camden School District. Since that time the black student population in Camden School District has increased approximately 1% per year. The Camden School District has now reached a point that the percentage of black students will certainly increase. This increase, and the tendency of the Camden School District to attract and retain black students along with the tendency of Fairview and Harmony Grove to attract white students, will in the near future result in the absolute resegregation of public education within Ouachita County. The Camden School District will be

racially identifiable as a black district while Fairview and Harmony Grove will be racially identifiable as white districts.

14. Unless enjoined by this Court, the defendants will continue to operate segregated school systems and will otherwise continue the trend toward three racially identifiable school districts. This consequence will further deprive black students within the three districts of the right to attend fully desegregated, integrated schools wherein all vestiges of unlawful segregated are eliminated. The plaintiffs right to relief is well established under the Constitution and laws of the United States.

WHEREFORE, the plaintiffs respectfully pray that this Court set this matter for early hearing on the merits and, thereafter, enter appropriate declaratory and injunctive relief including:

A. A declaratory judgment that all the defendants and their predecessors in office have created, maintained and continue to operate a racially dual structure of public education in the three defendant school districts in violation of the Fourteenth Amendment to the Constitution and 42 U.S.C. §§ 1981, 1983 and 2000(d); and

B. An order requiring the defendants: (1) to cease their illegal and unconstitutional conduct, and (2) to develop and implement a plan for the correction and remediation of the alleged constitutional violations. Such plan should be either the consolidation of the three districts along with a comprehensive, fully remedial

desegregation plan; or an interdistrict, cooperative plan which effectively desegregates the schools disestablishes racially identifiable schools and remediates past and present effects of racial discrimination imposed upon black pupils. Moreover, the plan adopted should address the preexisting problem of eliminating racial achievement disparities within the consolidated school system or within the three separate school districts by use of, inter alia, magnet schools; revamped, nondiscriminatory transportation policies; effective, meaningful desegregation of faculty and staff at all levels; elimination of discrimination in all aspects of the school environment; elimination of all vestiges of racial segregation within the consolidated districts of the three districts; appropriate compensatory educational programs by which to overcome the present or anticipated effects of past discrimination; and the elimination of at-large methods for electing school directors.

Plaintiffs further pray for such further, additional or alternative relief as the Court finds appropriate and/or necessary to redress the constitutional and statutory wrongs which are established at trial, and their costs including reasonable counsel fees.

Respectfully submitted,

*/s/ John W. Walker*

John W. Walker
Mark Burnette
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, AR   72206
(501) 374-3758

Of Counsel:

*P.A. Hollingsworth*

P.A. Hollingsworth
415 Main Street
Little Rock, AR  72201
(501) 374-3420