IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LARRY MILTON, *et al.*                                                                                   PLAINTIFFS

v.                                      Case No. 1:88-cv-1142

MIKE HUCKABEE, *et al.*                                                               DEFENDANTS

**<u>ORDER</u>**

Before the Court is the Camden-Fairview School District's ("Camden-Fairview") Motion for Declaratory Judgment, or Alternatively, for Clarification of Previous Orders, or Alternatively, for Modification of Previous Orders. (ECF No. 262). Plaintiffs have filed a response in support of the motion. (ECF No 264). A response in opposition to the motion has been filed by the Governor of the State of Arkansas, the Arkansas Department of Education ("ADE"), the Arkansas State Board of Education ("SBE"), and the Members of the Arkansas State Board of Education (collectively, "State Defendants"). (ECF No. 276). Both Plaintiff and Camden-Fairview have filed replies. (ECF Nos. 283, 284).

**I. BACKGROUND**

On December 16, 1988, Plaintiffs—a group of African-Americans residing in Ouachita County, Arkansas—filed this action on behalf of their school-aged children against State Defendants; the Board of Directors of the Camden Arkansas Housing Authority; the City of Camden, Arkansas; the Board of Education of the Camden, Arkansas School District; the Camden, Arkansas Fairview School District; and the Board of Education of the Harmony Grove School District. Plaintiffs' Complaint alleged that Defendants acted in concert to deny African-American children equal educational opportunities by establishing, maintaining and perpetuating racially

discriminatory school systems. Among other forms of relief, Plaintiffs sought an order consolidating the three defendant school districts or an effective desegregation plan.

On October 16, 1990, the Camden School District and Fairview School District were consolidated. On November 27, 1990, the Court entered a consent order (hereinafter the "*Milton* Order") which provided, in pertinent part, that:

> C. Harmony Grove shall maintain an open admission policy in regard to non-resident black students. Harmony Grove shall not permit the transfer of white students from Fairview into the district without the written permission of Fairview. Acceptance of transfer students by Harmony Grove is subject to existing space and transfer limitations. Harmony Grove will also refrain from engaging in any other act or conduct tending directly or indirectly to have a segregative impact in the Fairview School District. Any student transferring to Harmony Grove in compliance with this order and other legal requirements will be immediately eligible for all school activities without any of the limitations imposed by A.C.A. § 6-18-206.

(ECF No. 262-1, p. 2). The *Milton* Order further states as follows:

> D. The consolidated Camden-Fairview School District and the Harmony Grove School District . . . are desirous of avoiding further litigation and controversy. While both of these districts are separate and autonomous and intend to operate independently in exercising governmental authority, these two districts agree that further costly litigation can be avoided by inter-district agreements. These agreements include but are not limited to the following:
>
> 1. Both school districts shall refrain from adopting student assignment plans or programs that have an inter-district segregative effect on either district.

*Id*. at 3. The *Milton* Order further states that this Court "will retain jurisdiction to supervise all aspects of this and subsequent orders of this Court until such time as this Court issues a declaration of unitary status." *Id*.

On May 8, 1991, the Court issued an order tentatively approving a settlement agreement between Plaintiffs, Camden-Fairview, and the State Defendants. (ECF No. 220). The Court entered a consent order declaring Camden-Fairview unitary on February 1, 2002 (ECF No. 254);

2

however, the Court left certain desegregation obligations in place for Camden-Fairview and Harmony Grove, including paragraph C of the *Milton* Order as stated above. (*See* ECF No. 254, ¶ 3). The consent order further provided that State Defendants, the City of Camden, the Housing Authority of Camden, Harmony Grove School District, and Camden-Fairview had complied with the obligations imposed by the 1991 settlement agreement and court orders and dismissed them from the suit with prejudice.

On December 14, 2009, an action was removed to this Court from the Circuit Court of Ouachita County, Arkansas, alleging that a student at Camden-Fairview was denied permission to transfer to Harmony Grove High School in violation of the Fourteenth Amendment of the United States Constitution, the Arkansas Constitution and Arkansas common law. *See Lancaster v. Guess*, Case No. 1:09-cv-1056. The parties to the *Lancaster* action later entered into a settlement agreement and jointly moved to dismiss, which was granted by the Court on July 26, 2010 (hereinafter the "*Lancaster* Order"). (ECF No. 262-5). The *Lancaster* Order states that the Court retains jurisdiction of the case for the sole purpose of enforcing the parties' settlement agreement and enforcing its orders in the present action. The *Lancaster* Order also reiterates that paragraph C, as stated above, from the *Milton* Order is still in effect.

The Arkansas Public School Choice Act of 1989 (the "1989 Act") was in effect at the time the parties executed the *Milton* and *Lancaster* Orders. The 1989 Act provided for a school choice program whereby a student could apply to attend a public school in a district that the student did not reside in, subject to certain limitations. The 1989 Act provided further that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and that "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern."

3

(ECF No. 262-2, §§ 11(a-b)).

In 2013, the Arkansas Public School Choice Act of 2013 (the "2013 Act") was enacted, expressly repealing the 1989 Act. The 2013 Act again allowed students to apply to attend a non-resident public school district. However, the 2013 Act did not contain the 1989 Act's limiting language barring segregative inter-district transfers.[1] The 2013 Act allowed any school district to annually declare itself exempt from participating in school choice if said participation would conflict with the school district's obligations under a federal court's "desegregation plan regarding the effects of past racial segregation in student assignment" or a federal court order "remedying the effects of past racial segregation." (ECF No. 262-5, p. 8). Any school district that made this declaration would be exempt from participating in school choice for that school year.

In 2015, the Arkansas Public School Choice Act of 2015 (the "2015 Act") was enacted, thereby amending the 2013 Act. The 2015 Act, among other things, eliminated the school districts' ability to declare themselves exempt from participating in school choice due to a conflict with existing obligations under a federal court's desegregation plan or order. Instead, the 2015 Act required that a school district wishing to be exempt from participating in school choice must submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan with the [2015 Act.]" (ECF No. 262-9, p. 5). If the school district submitted proof of an order or plan to the ADE, the provisions of the order or plan would govern, thereby exempting the school district from participating in school choice.

In 2017, the Arkansas General Assembly passed Act 1066 of the Regular Session of 2017 (the "2017 Act"), thereby amending the 2015 Act. The 2017 Act, among other things, amended

---

[1] The term "segregative," as used throughout this Order, refers to a student transfer from a resident school district to a non-resident school district where the percentage of enrollment for the transferring student's race exceeds that percentage in the student's resident district.

4

the 2015 Act's language allowing school districts to seek an exemption from participating in school choice. Under the 2017 Act, school districts seeking to be exempt from participation in school choice must now submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan *that explicitly limits the transfer of students between school districts*." (ECF No. 262-10, p. 2) (emphasis added). The ADE evaluates school districts' applications for an exemption from school choice and determines whether to grant an exemption. The SBE decides any appeals of the ADE's decisions regarding school choice exemption applications.

From 2013 through 2017, Camden-Fairview annually applied for exemptions from participating in school choice pursuant to the school choice law in effect at the time. Each year, the ADE and SBE observed these declared conflicts with school choice and included Camden-Fairview on a public list of school districts not participating in school choice. Accordingly, Camden-Fairview did not participate in school choice at all while the 2013 Act and 2015 Act were in effect.

On December 27, 2017, Camden-Fairview applied for an exemption from participating in school choice under the 2017 Act for the 2018-2019 school year and submitted supporting documents to the ADE. On January 19, 2018, the ADE denied Camden Fairview's request for a total exemption, finding only a "partial conflict" between Camden-Fairview's desegregation obligations and participation in school choice. The ADE found that Camden-Fairview had failed to demonstrate that it was subject to a federal court's active desegregation order "explicitly limiting the <u>interdistrict</u> transfer of students" as to all school districts except Harmony Grove. (ECF No. 262-14, ¶ 3) (emphasis in original). Thus, the ADE concluded that Camden-Fairview is required to participate in school choice for the 2018-2019 school year "for all transfers except those to the

5

Harmony Grove School District." (ECF No. 262-14, ¶ 3).

On January 30, 2018, Camden-Fairview appealed the ADE's decision to the SBE. The SBE heard Camden Fairview's appeal on March 8, 2018 and, in a subsequent order dated March 28, 2018, upheld the ADE's decision that Camden-Fairview had a partial conflict with participation in school choice, limited only to transfers from Camden-Fairview to Harmony Grove, and that Camden-Fairview must participate in school choice as to all other districts for the 2018-2019 school year. (ECF No. 262-16).

On May 4, 2018, Camden-Fairview filed the instant Motion for Declaratory Judgment. (ECF No. 262). Camden-Fairview asserts that it is still subject to the obligations imposed by the *Milton* and *Lancaster* Orders and thus has a conflict with taking part in school choice pursuant to the 2017 Act. Camden-Fairview seeks, through various alternative means of relief, a finding that it is prohibited from taking part in school choice and/or a declaration that portions of the 2017 Act are unconstitutional.

On May 23, 2018, the Court issued an order certifying Camden-Fairview's constitutional challenge and sending notice to the Arkansas Attorney General's Office pursuant to Federal Rule of Civil Procedure 5.1(b). (ECF No. 269). On June 15, 2018, the ADE and SBE filed their response in opposition to Camden-Fairview's Motion for Declaratory Relief. (ECF No. 276). On June 22, 2018, the Court held a status conference in which Camden-Fairview, Plaintiffs, and counsel from the Arkansas Attorney General's Office participated.

On August 1, 2018, the Court held an evidentiary hearing on Camden Fairview's separate motion for preliminary injunctive relief. At the hearing, the parties offered evidence and witness testimony, much of which is also relevant and applicable to the instant motion. On September 11, 2018, Camden-Fairview informed the Court that it did not desire an additional evidentiary hearing

regarding the instant motion. (ECF No. 301). On September 21, 2018, the ADE and SBE informed the Court that they also did not desire an additional evidentiary hearing regarding the instant motion. (ECF No. 302). Accordingly, the Court finds the matter fully briefed and ripe for consideration.

## II. DISCUSSION

Camden-Fairview seeks a ruling that it is prohibited from taking part in school choice. Specifically, Camden-Fairview asks that the Court confirm its conflict with participating in school choice and declare void the SBE's March 28, 2018 order requiring Camden-Fairview to participate in school choice as to all school districts except Harmony Grove. Camden-Fairview asks the Court to do so through one of the following means: (1) modifying the *Milton* and *Lancaster* Orders to prohibit all segregative inter-district transfers in light of changes in Arkansas law, occurring with the 2013 repeal of the 1989 Act and the subsequent enactment of the 2017 Act; (2) clarifying that the *Milton* and *Lancaster* Orders, as written, prohibit segregative inter-district transfers; (3) issuing a declaratory judgment confirming that Camden-Fairview has a conflict with participating in school choice due to the *Milton* and *Lancaster* Orders and ordering the SBE to amend its March 28, 2018 order requiring Camden-Fairview to participate in school choice as to all school districts except Harmony Grove; or (4) declaring that the 2017 Act is unconstitutional to the extent that it authorizes the ADE to determine whether or not a school district has a conflict with participating in school choice.

The Court will begin by addressing Camden-Fairview's request for modification of the *Milton* and *Lancaster* Orders. If necessary, the Court will then address Camden-Fairview's requests for clarification of the *Milton* and *Lancaster* Orders, for a declaratory judgment, and that portions of the 2017 Act be declared unconstitutional.

7

### A. Modification of the *Milton* and *Lancaster* Orders

Camden-Fairview asks that the Court modify the *Milton* and *Lancaster* Orders to prohibit segregative inter-district transfers in light of significant changes in Arkansas' school choice laws that were not contemplated by the Court or by the parties to this case when they entered into the *Milton* and *Lancaster* Orders.

Federal Rule of Civil Procedure 60(b) authorizes modification of consent decrees. *Smith v. Bd. of Educ. of the Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 570 (8th Cir. 2014). "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree." *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)); *id.* at 572 ("*Rufo* and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law."). Further, the Eighth Circuit has found that modification of consent decrees in school desegregation cases is permissible under certain circumstances. *See id.* (affirming a district court's modification of a consent decree in a school desegregation case).

"A party seeking modification of a consent decree 'must [first] establish that a significant change in facts or law warrants revision of the decree.'" *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist., No. 1*, 56 F.3d 904, 914 (8th Cir. 1995) (quoting *Rufo*, 502 U.S. at 393). If the movant carries this burden, the court "must then determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.*

The Court must first determine whether a significant change in facts or law warrants modification of the *Milton* and *Lancaster* Orders. If the Court answers that question in the affirmative, it will then determine whether Camden-Fairview's proposed modification is suitably

tailored to the changed circumstance.

### 1. Significant Change in Facts or Law

Camden-Fairview contends that the repeal of the 1989 Act and the passage of the 2013, 2015, and 2017 Acts qualifies as a significant change that warrants modification, arguing that the changes in the statutory framework now prevent Camden-Fairview from complying with its constitutional obligations to avoid taking any action with the natural and foreseeable consequence of causing segregative impact within Camden-Fairview. Camden-Fairview argues further that "[t]he State's shift from enacting laws that prohibited segregation and encouraged integrative transfers to advocating for school choice above all else, including desegregation efforts, is another important change in circumstance justifying modification." (ECF No. 263, p. 24-25).

The 1989 Act was in effect when the *Milton* and *Lancaster* Orders were entered. The 1989 Act included limitations stating that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern." (ECF No. 262-2, §§ 11(a-b)). The State of Arkansas subsequently repealed the 1989 Act and enacted the 2013 Act, which did not contain the 1989 Act's limiting language prohibiting segregative student transfers, and instead allowed school districts to declare themselves exempt from participating in school choice if participation would conflict with the school district's obligations under a court desegregation plan or order. Subsequent amendments to the school choice statutory framework further limited school districts' ability to obtain an exemption from participating in school choice.

Under the current iteration of Arkansas' school choice law—the 2017 Act—a school that claims a conflict with participating in school choice must show that it is subject to an active and

9

enforceable desegregation court order or plan that "explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Accordingly, for Camden-Fairview to receive a total exemption from participating in school choice under the 2017 Act, it must show that it is subject to a desegregation order that explicitly bars "inter-district" student transfers not only as between Camden-Fairview and Harmony Grove but also as to all other school districts.

As previously mentioned, a party seeking modification of a consent decree must show that significant changes in facts or law warrant revision of the decree. *Rufo*, 502 U.S. at 393. "Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Mays v. Bd. of Educ. of Hamburg Sch. Dist.*, 834 F.3d 910, 919 (8th Cir. 2016) (quoting *Rufo*, 502 U.S. at 385). However, changes in statutory law may warrant modification. *See Rufo*, 502 U.S. at 388 (noting that "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."). Modification may also be warranted when changed factual conditions make compliance with the decree substantially more onerous or when a decree proves to be unworkable because of unforeseen obstacles. *Id.* at 384.

Camden-Fairview states that modification is warranted because, at the time the *Milton* and *Lancaster* Orders were entered, the 1989 Act prohibited segregative transfers of both non-black and black students to non-resident school districts. Camden-Fairview argues that the 1989 Act's plain language eliminated the need for the parties to draft the agreed *Milton and Lancaster Orders* in a way that expressly prohibited segregative inter-district transfers as to all school districts. Camden-Fairview states that "[f]rom entry of the 1990 *Milton* Order through the 2013 legislative session, [Camden-Fairview] was able to rely on the restrictions articulated in the 1989 Act as a means of preventing private choice from interfering with its efforts to desegregate." (ECF No.

263, p. 23). Camden-Fairview argues that it is now unable to comply with its constitutional obligations because the 1989 Act was repealed and replaced with a school choice law that does not contain express limitations against segregative inter-district transfers and instead only affords exemptions from participating in school choice to school districts that can produce a court order explicitly prohibiting the transfer of students between school districts.

The ADE and SBE argue in response that modification of the *Milton* and *Lancaster* Orders is not warranted in this instance.[2] The ADE and SBE argue that the repeal of the 1989 Act and the subsequent passage of the 2013, 2015, and 2017 Acts is not a significant change in circumstances that warrants revision of a consent decree.

Upon consideration, the Court finds that the repeal of the 1989 Act and its subsequent replacement by the 2013, 2015, and 2017 Acts is a significant change in circumstances. The 1989 Act, which was in effect when the parties executed the *Milton* and *Lancaster* Orders, expressly prohibited all segregative inter-district student transfers. The *Milton* and *Lancaster* Orders contain no language expressly prohibiting all inter-district student transfers but instead specifically prohibit inter-district transfers as to Harmony Grove. The *Milton* and *Lancaster* Orders further state that both Camden-Fairview and Harmony Grove "shall refrain from adopting student assignment plans or programs that have an inter-district segregative effect on either district." (ECF No. 263-1, p. 3).

The Eighth Circuit has instructed that courts interpreting a consent decree:

---

[2] The Court notes that, although not asserted in the section responding to Camden-Fairview's request for modification, the ADE and SBE make the threshold argument that Camden-Fairview does not have standing to challenge the constitutionality of the 2017 Act or to request declaratory relief. To the extent that the ADE and SBE also intended to argue that Camden-Fairview does not have standing to request modification of the *Milton* and *Lancaster* Orders, the Court finds that argument unavailing. The Eighth Circuit has made clear in a desegregation context that school districts that are subject to a consent decree may seek modification of the consent decree. *See, e.g.*, *Smith*, 769 F.3d at 570. Accordingly, the Court finds that Camden-Fairview has standing to request modification of the consent decree entered into by Camden-Fairview in this case.

are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order . . . because a consent decree is a particular sort of legal instrument that cannot be read in a vacuum. It is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it.

*United States v. Knote*, 29 F.3d 1297, 1300 (8th Cir. 1994) (internal quotation marks omitted). Although the *Milton* and *Lancaster* Orders do not expressly prohibit all inter-district transfers, the Court finds that the *Milton* and *Lancaster* Orders clearly intended to prohibit *any* racial discrimination occurring within the Camden-Fairview school district, including preventing student transfers which result in segregation of Camden Fairview's student body.

Changes in statutory law may be significant changes in circumstances, and the Court finds that the repeal of the 1989 Act and the subsequent enactment of the 2017 Act is a significant change. *Rufo*, 502 U.S. at 388. Moreover, the Court finds that the 2017 Act's requirement that a school district's produced court order must explicitly bar inter-district transfers presents an unforeseen obstacle that causes the *Milton* and *Lancaster* Orders to be unworkable, as the parties drafted the *Milton* and *Lancaster* Orders at a time in which including language prohibiting all inter-district transfers was unnecessary. *Id.* at 384. Up until 2017, Camden-Fairview was able to comply with its desegregation obligations, including preventing student transfers. Even after the repeal of the 1989 Act and the subsequent enactment of the 2013 Act, Camden-Fairview did not experience any segregative inter-district transfers because it was able to declare itself totally exempt from participating in school choice. Camden-Fairview still did not experience any segregative inter-district transfers while the 2015 Act was in place because the ADE and SBE found that the *Milton* and *Lancaster* Orders were sufficient evidence of a conflict, allowing Camden-Fairview to claim a total exemption from participating in school choice.

However, the changes to the statutory framework brought about with the 2017 Act currently prevent Camden-Fairview from claiming a total exemption from participating in school

choice. Camden-Fairview is, for the first time since 1990, now being required to allow students to make segregative inter-district transfers pursuant to school choice because the *Milton* and *Lancaster* Orders do not explicitly bar all inter-district student transfers as now required by the 2017 Act. Therefore, the Court finds that Camden-Fairview's asserted change in circumstances satisfies its burden because changes in the governing school-choice statutory framework—and the ensuing requirements and limitations—have an actual effect on Camden Fairview's ability to comply with the *Milton* and *Lancaster* Orders. Moreover, the ADE and SBE do not argue, and there is no evidence in the record to indicate, that the parties to the *Milton* and *Lancaster* Orders contemplated that the 1989 Act would be repealed and replaced with a school choice law that requires that the *Milton* and *Lancaster* Orders contain specific restrictive language that was specifically built into the 1989 Act. Accordingly, the Court finds that Camden-Fairview has shown that a significant change in circumstances is present, justifying modification of the *Milton* and *Lancaster* Orders. The Court will now determine whether Camden-Fairview's proposed modification is suitably tailored to the changed circumstance.

### 2. Suitably Tailored Modification

Camden-Fairview asks the Court to modify the *Milton* and *Lancaster* Orders to reflect the changes in the governing school-choice statutory framework since the entry of those Orders. Specifically, Camden-Fairview asks that the Court modify the decree to explicitly prohibit all segregative inter-district transfers unless requested as otherwise provided by Arkansas law for educational or compassionate purposes and approved by the Camden-Fairview school board. (ECF No. 262, p. 17).

The ADE and SBE argue that modification of the *Milton* and *Lancaster* Orders is not suitably tailored to the changed circumstances. The ADE and SBE argue that Camden-Fairview's

proposed modification is too broad because there has never been a judicial determination of an inter-district violation between Camden-Fairview and any school district other than Harmony Grove.[3]

A movant seeking a modification of a consent decree must show that the proposed modification is suitably tailored to the changed circumstance. *Id.* at 391. To be "suitably tailored to the changed circumstance," a modification "must not create or perpetuate a constitutional violation," or "strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id.* With this standard in mind, the Court finds that Camden-Fairview's proposed modification is suitably tailored to the changed circumstances.

The ADE and SBE's primary contention is that the Court should not modify the *Milton* and *Lancaster* Orders to expressly prohibit segregative inter-district student transfers as to all school districts because it would be an impermissible inter-district remedy in that this case originally concerned only inter-district conduct between Camden-Fairview and Harmony Grove. The ADE and SBE argue that the Court has not found in this case that Camden-Fairview and another school district other than Harmony Grove committed an inter-district constitutional violation and, thus, any remedy fashioned to address Camden-Fairview's conduct must be limited solely to Camden-Fairview and Harmony Grove. The ADE and SBE do not elaborate further on this point, nor do they cite authority supporting the proposition that modification of a consent decree under circumstances like this case is an impermissible inter-district remedy. However, the ADE and SBE argue in their response to a separate motion in this case that granting the relief Camden-

---

[3] The ADE and SBE also argue in one sentence, without citing to supporting authority, that any modification to the *Milton* and *Lancaster* Orders would have to be based on Camden-Fairview's unitary status. (ECF No. 276, p. 24). While the Court did declare Camden-Fairview unitary in the December 10, 2002 Consent Order (ECF No. 254), it also left certain desegregation obligations in place, including the restrictions placed on student transfers between Camden-Fairview and Harmony Grove. Because desegregation obligations remain, the Court finds that modification is not prohibited by the fact that Camden-Fairview has been declared unitary in status.

Fairview seeks would "effectively enjoin [the Smackover-Norphlet School District ("Smackover")][4] from accepting [Camden-Fairview's] transfer students . . . by way of a modification to a consent order entered in a case to which Smackover was never a party." (ECF No. 291, p. 22).

Assuming *arguendo* that the ADE and SBE's present argument is also based on this line of thinking, the Court finds the argument unpersuasive. The ADE and SBE correctly point out that an "interdistrict remedy is appropriate only upon a showing of a constitutional violation within one district that produces a significant segregative effect in another district." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 778 F.2d 404, 444 (8th Cir. 1985) (internal quotation marks omitted). The Supreme Court has interpreted this rule to mean that "district courts may not restructure or coerce local governments or their subdivisions." *Liddell v. State of Mo.*, 731 F.2d 1294, 1308 (8th Cir. 1984) (discussing *Hills v. Gautreaux*, 425 U.S. 284 (1976)). In other words, absent proof of an inter-district violation, a court-imposed remedy exceeds its scope when it is "imposed upon governmental units that were neither involved in nor affected by the constitutional violation." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).

Upon consideration, the Court finds that Camden-Fairview's proposed modification would not constitute an inter-district remedy. Camden-Fairview asks the Court to modify the *Milton* and *Lancaster* Orders to prohibit Camden-Fairview from allowing segregative inter-district student transfers to all other school districts. To be fair, this modification would indirectly prevent Smackover and other school districts from receiving Camden-Fairview transfer students via school choice because Camden-Fairview would not be allowed to permit segregative inter-district transfers. However, the ADE and SBE cite no binding authority finding that a remedy like the

---

[4] The Smackover-Norphlet School District borders the Camden-Fairview School District.

15

modification Camden-Fairview seeks is an inter-district remedy, and the Court is unaware of any such authority.[5] Rather, the Eighth Circuit has found inter-district remedies where courts directly order action that directly impacts multiple school districts. *See, e.g.*, *Edgerson on Behalf of Edgerson v. Clinton*, 86 F.3d 833, 837 (8th Cir. 1996) (describing forced consolidation of school districts and imposing an inter-district magnet school plan as inter-district remedies); *Milliken I*, 418 U.S. at 754 (1974) (characterizing the creation of an inter-district student bussing plan as an inter-district remedy).

The modification would not directly restrict any other school district's ability to participate in school choice or to receive students from other school districts that are otherwise eligible to participate in school choice. The proposed modification would only prevent other school districts from receiving segregative transfer students from Camden-Fairview pursuant to school choice. This minor intrusion into other school districts' ability to receive Camden-Fairview transfer students does not directly impact those other school districts. Therefore, the Court finds that the modification sought by Camden-Fairview is not an impermissible inter-district remedy.

Camden-Fairview's proposed modification changes the terms of the *Milton* and *Lancaster* Orders to include the necessary language required by the 2017 Act, thereby letting Camden-Fairview prohibit segregative inter-district transfers from Camden-Fairview to all other school districts, which it was able to do from the entry of the *Milton* and *Lancaster* Orders until the enactment of the 2017 Act. Beginning with the 2019-2020 school year, the *Milton* and *Lancaster* Orders, as modified, would explicitly feature the newly added language required by the 2017 Act.

---

[5] In *Milliken v. Bradley*, the case cited primarily by the ADE and SBE in support of their argument, the United States Supreme Court found an impermissible inter-district remedy where the federal district court forced multiple school districts to consolidate to remedy a condition of segregation found to exist in only one of the school districts. 418 U.S. 717, 744, 752 (1974). In the case at bar, Camden-Fairview does not ask the Court to force consolidation of it and any other school district.

Thus, the *Milton* and *Lancaster* Orders would constitute evidence of a "genuine conflict under an active desegregation order or active court-approved desegregation plan that explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Thus, moving forward, no students could undergo a segregative inter-district transfer from Camden-Fairview to another school district pursuant to the 2017 Act. The Court finds that this modification is suitably tailored to address the changed circumstance that occurred when the 1989 Act was repealed and subsequently replaced by the 2013 Act, the 2015 Act, and—most importantly—the 2017 Act.

The Court will not require any student who transferred from Camden-Fairview to other school districts pursuant to school choice for the 2018-2019 school year return to Camden-Fairview. At the time of the transfer, the *Milton* and *Lancaster* Orders did not contain the necessary language contemplated by the 2017 Act for Camden-Fairview to claim a total exemption from school choice. For this same reason, the Court will not void the SBE's March 28, 2018 order requiring Camden-Fairview to participate in school choice for the 2018-2019 school year from all transfers except those to the Harmony Grove School District. At the time the SBE's March 28, 2018 order was entered, the *Milton* and *Lancaster* Orders did not feature the necessary language contemplated by the 2017 Act for Camden-Fairview to attain a total exemption from school choice. The modified *Milton* and *Lancaster* Orders shall have prospective effect, allowing Camden-Fairview to claim a total exemption from school choice beginning with the 2019-2020 school year.

### 3. Conclusion

The Court has determined that "a significant change in facts or law warrants revision of the [*Milton* and *Lancaster* Orders.]" *Little Rock Sch. Dist.*, 56 F.3d at 914. The Court has also determined that "the proposed modification is suitably tailored to the changed circumstance." *Id.*

17

Accordingly, the Court shall modify the *Milton* and *Lancaster* Orders in accordance with Camden-Fairview's proposed modification.

### B. Other Requested Forms of Relief

Camden-Fairview also requested that the Court grant it relief via other alternative methods. However, in light of the Court's above finding that modification of the *Milton* and *Lancaster* Orders is warranted, the Court finds it unnecessary to address the parties' arguments regarding the other forms of relief sought.

### III. CONCLUSION

For the above-discussed reasons, the Court finds that Camden-Fairview's motion (ECF No. 262) should be and hereby is **GRANTED** to the extent that it requests modification of the *Milton* and *Lancaster* Orders. Accordingly, the *Milton* and *Lancaster* Orders are hereby **MODIFIED** to explicitly prohibit the segregative inter-district transfer of students between Camden-Fairview and any school district, unless such a transfer is requested for education or compassionate purposes and is approved by Camden-Fairview's school board on a case-by-case basis. Camden-Fairview's motion (ECF No. 262) is **DENIED AS MOOT** as to the remainder of Camden Fairview's alternative requests for relief.

**IT IS SO ORDERED**, this 17th day of January, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge