IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**LARRY MILTON**, *et al.*                                                                                           **PLAINTIFFS**

v.                                          No. 1:88-cv-1142

**MIKE HUCKABEE**, *et al.*                                                                                       **DEFENDANTS**

AND

**DOUGLAS LANCASTER**, *et al.*                                                                        **PLAINTIFFS**

v.                                          No. 1:09-cv-1056

**DR. JERRY GUESS, in his capacity
as Superintendent of Camden-Fairview
School District No. 16**, *et al.*                                                                               **DEFENDANTS**

## BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION TO TERMINATE CONTINUED SUPERVISION

### I.   Introduction

On March 15, 2023, the State of Arkansas ("Arkansas") filed a Motion to Terminate Continued Supervision of the Camden-Fairview School District ("Camden-Fairview") (Doc. 330). Arkansas argues that the provision of the 2002 Consent Order maintaining a prior restriction on the transfer of white children from Camden-Fairview to the Harmony Grove School District ("Harmony Grove") in this case was "legally dubious in 2002 and is patently unconstitutional today." *State of Arkansas Brief, at 5*. For the first time before this Court, Arkansas makes this argument even though it was a signatory to the Settlement Agreement that was incorporated in to the 2002 Consent Order. (Doc. 254). The Court should deny Arkansas' motion because Arkansas

1

has not met its burden to show that the provision of the 2002 Consent Order placing restrictions on white students from transferring to Harmony Grove should be terminated.

## II. The Eighth Circuit's opinion in the school-choice appeal has no precedential or binding effect on whether this Court should terminate its supervision of Camden-Fairview

On rehearing, a panel of the Eighth Circuit reversed its prior decision by requiring Camden-Fairview and other school districts to comply with Arkansas's newly-enacted school choice law. In addressing an issue that Arkansas did not raise in this Court, the Eighth Circuit expressed concern about the continued application of desegregation orders entered decades ago and suggested that this Court order unitary status hearings *sua sponte*. *United States v. Junction City Sch. Dist.*, 14 F.4th 658, 668 (8th Cir. 2021). This advice was not a "directive" as Arkansas states in its brief. This Court was not under any duty to hold a unitary status hearing or, as in this case, a hearing on the constitutionality of the student transfer provision of the consent orders. Instead, Arkansas waited 21 years after it signed the 2002 Consent Order before requesting this relief on behalf of Camden-Fairview's white students.

## III. The transfer restriction in the 2002 Consent Order was intended to prevent the demonstrated segregative impact of white students transferring to Harmony Grove

Section I(C) of the 1990 Consent Order states, in relevant part, "Harmony Grove shall not permit the transfer of white students from Fairview into the district without the written permission of Fairview." (Doc. 262-1, at 2). Further, this provision states, "Harmony Grove will also refrain from engaging in *any other act or conduct* tending directly or indirectly to have a segregative impact in the Fairview School District." *Id*. (emphasis added). The language in this provision shows that all parties to the 1990 Consent Order recognized that allowing the unrestricted transfer of white students to Harmony Grove had a segregative impact. Even though the Court declared

Camden-Fairview unitary in the 2002 Consent Order, the proviso that restrictions on transfers continue to prevent "white flight" in the future shows that all parties (including Arkansas) understood that such a restriction was necessary to the desegregation of Camden-Fairview. Arkansas has not met its burden of showing that circumstances have changed such that the restriction is no longer needed.

### IV. The transfer restriction is not unconstitutional under the Equal Protection Clause of the Fourteenth Amendment

Arkansas cites *Parents Involved* in support of its argument that the restriction on white students transferring to Harmony Grove is racially discriminatory and in violation of the Equal Protection Clause of the Fourteenth Amendment. *Parents Involved in Cmty. Schs. v. Seattle School Dist. No. 1*, 551 U.S. 701 ((2007). *Parents Involved* is distinguishable from the present case. Unlike Camden-Fairview, the Seattle School District was never subject to *de jure* segregation or subject to court-ordered desegregation. *Parents Involved*, 551 U.S. at 702-03. The Jefferson County schools had been declared unitary and later voluntarily adopted a school choice plan. In this case, the 2002 Consent Order declared the school district unitary and at the same time the parties (including Arkansas) and the Court agreed that the restriction on the transfer of white students should remain to secure the progress that enabled unitary status. Securing this progress was the compelling governmental interest in restricting the transfer of white students to Harmony Grove. This restriction is narrowly tailored because any transfer, other than those of students of Camden-Fairview employees, can be approved by Camden-Fairview. Arkansas has not put forth any evidence demonstrating that the transfer requests of white students are rarely or never approved.

## V.  Conclusion

For the reasons stated above, the Court should deny the State of Arkansas' Motion to Terminate Continued Supervision.

Respectfully submitted,

WALKER & CHILDS, PLLC
1815 S. State Street
Little Rock, Arkansas 72206
501-287-8680 (Telephone)
501-222-8872 (Facsimile)
Email: schilds@walkerandchilds.com

   Shawn G. Childs
Shawn G. Childs, Bar No. 99058


ATTORNEY FOR PLAINTIFFS
