## IN THE UNITED STATES DISRICT COURT
## WESTERN DISTRICT OF ARKANSAS

**LARRY MILTON, et al.**                                          **PLAINTIFFS**

**v.**                          **CASE NO. 1:88-CV-01142-SOH**

**MIKE HUCKABEE, et al.**                                          **DEFENDANTS**

**AND**

**DOUGLAS LANCASTER, et al.**                                          **PLAINTIFFS**

**v.**                          **CASE NO. 1:09-CV-01056**

**DR. JERRY GUESS, in his capacity**                                          **DEFENDANTS**
**as Superintendent of Camden-Fairview**
**School District No. 16, et al.**

## RESPONSE REGARDING STATUS OF STATE DEFENDANTS

***Introduction***

On March 15, 2023 the "State Defendants" filed a Motion to Terminate Continued Supervision. Doc. 330 & 331.  The Court denied the motion and directed the State Defendants "to submit a brief evidencing its role in the case." Doc. 355.  In response, the Attorney General argues that the Arkansas Department of Education and the State Board of Education are Defendants in this case, even though they were previously dismissed, and that the law of the case doctrine supports their continued status as parties to this case.  The cases relied upon by the Attorney General are distinguishable, and the law of the case doctrine does not require that this Court recognize the State Defendants as proper parties with standing to move for termination of either the 1990 consent order (which they did not sign) or the 2010 order entered in the *Lancaster* case (to which they were not a party).

*Facts*

The State of Arkansas was dismissed from this case in accordance with the May 1991 settlement agreement among the Camden-Fairview School District (CFSD), the State Defendants, and the Plaintiffs. (*See* May 6, 1991 settlement agreement, attached as Exhibit A to the Court's May 8, 1991 Order, Doc. 220). The State's only obligation under that agreement was to make a series of payments to CFSD, which it did. The August 1991 Consent Order (Doc. 225) approved the May 1991 settlement agreement and specifically stated that the Plaintiffs' Complaint was "dismissed with prejudice against the state Defendants, subject only to the Court's retention of enforcement jurisdiction as specified below. . . . The Court shall retain jurisdiction of the matter to resolve any disputes as to the implementation of the settlement agreements." (Doc. 225, p. 7).

The Court's retention of jurisdiction, as applied to the State, was to enforce the settlement agreement's payment provisions. The State made the required payments, and on December 10, 2001, the parties entered into another settlement agreement that specifically notes the State's uncertainty as to its status in the case. (*See* December 10, 2001 settlement agreement, attached as Exhibit A to CFSD's December 21, 2001 Motion for Declaration of Unitary Status, Doc. 241). The December 2001 settlement agreement reads, in part, as follows:

> the settlement agreement/court order dismissed the State, but also imposed certain affirmative obligations on the State over which the Court exercised continuing jurisdiction until such time as CFSD was declared to have attained unitary status; and… the resulting situation is that the State has continued to be a party to the CFSD desegregation case with continuing obligations with no certainty as to when those obligations will end; and… the State believes it is in compliance with all obligations imposed by settlement agreements and court orders in this case and desires an end to the CFSD desegregation case and any continuing obligations therein[.]

2001 Settlement Agreement, p. 1.

The December 2001 settlement agreement called for additional payments to be made to CFSD by the State, and then specifically states that:

> [u]pon the final payment . . . . on July 1, 2008, the State is released from any further financial payments or obligations arising from any terms, conditions, or precedents with regard to this litigation. Upon the execution of this settlement agreement, CFSD, the Plaintiffs, and all other parties, their assignees or successors in interest are barred from attempting to extend the State's obligations under the instant agreement or the 1991 agreement, prior consent orders entered into this matter, or any order or orders that may be entered by the Court pursuant to this settlement agreement.

¶ 9, p. 6.

It is therefore clear that the State, upon making the final payment to CFSD on July 1, 2008, was no longer a party to the case as of that date. Any continuing reservations of jurisdiction applied only to CFSD and Harmony Grove School District regarding enforcement of paragraph 1(C) of the November 27, 1990 Consent Order. (Doc. 183). The State was not a signatory to the 1990 Consent Order, nor was it ever a party to the later case, *Lancaster v. Guess*, in which this Court held that paragraph 1(C) remained "in full force and effect at this time." *See Lancaster* Order, pp. 1-2,  ¶ 2, July 26, 2010.

The confusion then arises from the filings in 2018. Until 2018, CFSD had been exempt from participating in free and unrestricted school choice with all other Arkansas school districts. In February and March 2018, the State Board of Education refused to grant CFSD a total exemption from participation in school choice. CFSD then filed a motion for various forms of relief in order to restore its exemption. CFSD's motion was filed May 4, 2018, a few days after the May 1, 2018 deadline to submit school choice applications for the 2018-2019 school year. CFSD sought alternative forms of relief, including a declaratory judgment and clarification or modification or previous orders, and also presented a constitutional challenge to the 2015 School Choice Act.

On May 18, 2018, the State filed a motion to stay, noting that FRCP 5.1 "requires notice to the Arkansas Attorney General's office when a pleading draws into question the constitutionality of a state statute" and that Rule 5.1 "also requires certification by the court and provides that the Attorney General *may intervene* within sixty (60) days after the notice has been filed or after the court certifies the challenge." (Doc. 267, ¶ 5, p. 2 (emphasis added)). The State, in noting that it might need to intervene to address the constitutional challenge, acknowledged that it was no longer a party. The State requested application of Rule 5.1's 60-day period and an extension of time to respond, which in combination would have resulted in the State's response to CFSD's motion not being due until August 13, 2018, which was scheduled to be the first day of school for the 2018-2019 school year. As time was of the essence in determining whether or not CFSD would be required to allow school choice transfers, CFSD stated as follows in its Notice of Constitutional Challenge of Statute:

> CFSD notes that the State was *previously* a party to this litigation. For that reason, CFSD is uncertain whether intervention is the proper course for the State Defendants in responding to CFSD's Motion.

(Doc. 271, ¶ 4, p. 2 (emphasis added)).

CFSD also stated, in its May 31, 2018 response to the State's motion for extension, that because "the State Defendants were party Defendants in this litigation from the inception of this case," CFSD "believes the State Defendants can file a response without intervening." (Doc. 273, ¶ 6, p. 2). On June 1, 2018, the Court entered an order in which "the Court note[d] that State Defendants already were parties in this matter." (Doc. 275, p. 2).

It is clear that the State had an interest in this case in 2018, due to the constitutional challenge filed by CFSD. It is less clear whether the June 1, 2018 order completely restores the State's party status or whether the State intended to participate in CFSD's case on a limited basis

related only to the 2018 school choice litigation, which was the posture taken by the State in its motions for limited intervention filed in the Hope, Junction City, and Lafayette County school districts' desegregation cases.  *See Davis, et al. v. Franks, et al.*, Case No. 4:88-cv-4082, U.S. Dist. Ct., W.D. Ark., Doc. 142, Second Motion for Limited Intervention; *United States of America v. Junction City Sch. Dist. No. 75, et al.*, Case No. 1:66-cv-1095, U.S. Dist. Ct., W.D. Ark., Doc. 13, Motion for Limited Intervention; and *Turner, et al. v. Lewisville Sch. Dist. No. 1*, Case No. 4:92-cv-4040, U.S. Dist. Ct., W.D. Ark., Doc. 37, Motion for Limited Intervention.  In those motions (*see, e.g. Turner,* Doc. 37, ¶ 10), the ADE and SBE stated that they were "entitled to intervene in this matter. . . for the limited purpose of opposing the LCSD's Motion for Declaratory Judgment, Clarification of Previous Orders, or Modification of Previous Orders."  The State argued, alternatively, that ADE and SBE "should be permitted to intervene. . . for the limited purpose of opposing the motion, because the motion implicates a statute administered by ADE and SBE." *Id.* at ¶ 11.

### Argument

Since the State Defendants were dismissed from this case (Doc. 254, 2002 Consent Order) their participation has been limited to opposing CFSD's 2018 motion.  The difference between the 2018 litigation and the State's pending motion is that in 2018, the State clearly had an interest in defending the constitutionality of a state statute, but now – despite the State's arguments to the contrary – it does not have an interest in the continued enforcement or the termination of the 1990 Consent Decree or the 2010 *Lancaster* Order, as the State was not a signatory to the 1990 decree and was never a party in the *Lancaster* case. The State's contention that the transfer prohibition "acted as an injunction against the State" is simply not true. The Department of Education, as the State notes (State's Brief, p. 3) is required to exempt CFSD and Harmony Grove School District

from participation in school choice to the extent the consent decree forbids interdistrict transfers. This prohibition, however,  does not flow from the Consent Decree (because state law did not allow segregative interdistrict transfers at the time the 1990 Consent Decree or the 2010 *Lancaster* Order were entered)—it is part of the 2015 School Choice Act, which acknowledges the history of desegregation cases in Arkansas and requires DESE to grant CFSD an exemption.

The Court has not explicitly found that the State Defendants are proper parties for all purposes, or that they have standing to initiate litigation of issues such as termination of the Consent Decree.  Recognizing this problem, the State Defendants argue that the law of the case doctrine "precludes litigation of matters that are decided implicitly, as well as those decided explicitly."  Brief Regarding Status of State Defendants ("State's Brief") (Doc. 356), p. 5, *citing UniGroup, Inc. v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995).  This is true, but only when there is an *actual decision* from a court which explicitly or implicitly decides an issue.  *E.g., United States v. 2035, Inc.*, 2017 U.S. Dist. LEXIS 196598 (D.S.D. 2017) (For the law of the case doctrine to apply, the issue "must actually have been decided by this court or by the Eighth Circuit," as "[l]aw of the case does not reach a matter which was not decided.").  The State Defendants have provided no authority for the proposition they advance here, that their limited participation in 2018 following CFSD's challenge of the constitutionality of the school choice laws can somehow be construed as law of the case that they have party status for all purposes.

Each case relied upon by the State in its "law of the case" arguments involved factual determinations, not procedural questions.  For example, the district court in *UniGroup*, relying on the law of the case doctrine, held that a trust was no longer a shareholder of Unigroup but that the shares at issue had been properly acquired by UniGroup "as determined in the earlier litigation."  *Id.* at 1209.  In affirming, the Eighth Circuit noted that the doctrine of law of the case "is a doctrine

6

of discretion" which "provides that *when a court decides a rule of law*, that decision should govern the same issues in subsequent stages in the same case." *Id.* at 1211 (citations omitted, emphasis added). To the extent this Court's June 1, 2018 order decided a rule of law, that order applied only to the State filing a response to the then-pending motion of CFSD to modify the consent orders or declare the school choice laws unconstitutional. It did not expressly – or implicitly – confer upon the State the ability to initiate its own challenge to the consent orders.

In *UniGroup*, as opposed to this case, the court actually "decide[d] a rule of law." The "district court granted summary judgment in favor of Unigroup on all of the stock transfer issues regarding the right to repurchase the shares." *Id.* The Eighth Circuit found that the order granting summary judgment "implicitly decided the stock transfer issue because the decision necessarily encompassed the matter of whether the trust's shares had been acquired by UniGroup and the amount to be paid for those shares." *Id.* Here, the State Defendants do not point to a court order which explicitly or implicitly decided that they are proper parties to this case at this time.

The other cases relied upon by the State Defendants are equally flawed. *Myers v. Raynor (In re Raynor)*, 617 F.3d 1065 (8th Cir. 2010) is unhelpful to the State Defendants, primarily because the Eighth Circuit held that the "law of the case doctrine is inapplicable to this case." *Id.* at 1069. In *Raynor*, a bankruptcy trustee argued that previous decisions of the district court and the Bankruptcy Appellate Panel were binding on the Eighth Circuit as law of the case. *Id.* at 1068. The trustee, the Eighth Circuit said, "misconstrues the law of the case doctrine" because "[a]s the reviewing court, we are bound by neither the district court nor the BAP's decision." *Id.* Nothing in *Raynor*, which expressly rejected application of the law of the case doctrine, supports the State Defendants' argument that the law of the case doctrine governs this case.

The State Defendants also cite *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 737 F.3d 1188, 1194-96 (8th Cir. 2013), for the proposition that a party which fails to litigate an issue that could have been presented during an appeal effectively waives their right to continue to litigate that issue upon remand.  State's Brief, p. 6. *Macheca* is a case in which the law of the case doctrine was applied to an issue which was very clearly and expressly decided in previous phases of the litigation, and acknowledged and accepted by the party who later sought to challenge it on appeal. *Macheca*, 737 F.3d at 1190-92.

The relevant issue in *Macheca* was whether the damages sought by Macheca against Philadelphia Indemnity Insurance Company should be reduced by a settlement Macheca had previously received from Travelers Insurance Company.  *Id.* at 1190-91.  In the first jury trial in this extended litigation, "there was an issue whether Macheca's claims against Philadelphia could be reduced by the amount Travelers had already paid." *Id.* at 1190.  Philadelphia's lawyer argued in a motion in limine that Macheca should be allowed to present to the jury the full amount of its damages, but the jury should be instructed to reduce those amounts by the amount Macheca received from Travelers. *Id.* at 1191.  Twice during a motion in limine hearing, Macheca's counsel "acknowledged the Travelers payment would reduce the damage award." *Id.* at 1191-92.

The district court ruled that Macheca would "be allowed to present evidence of their damages, even though they may not be able to recover the full amount of the loss of the damages they are claiming." *Id.* at 1192.  At the first trial, Macheca presented its damage evidence consistent with the district court's ruling by offering testimony of the full amount of its alleged lost business income but acknowledging and deducting the amount of the Travelers payment. *Id.*

In its appeal following the first trial, Macheca did not claim that the district court erred in its ruling that the Travelers payment received by Macheca would reduce Macheca's claimed

damages against Philadelphia. *Id.* When the case went to trial for a second time, "Macheca's evidence with respect to the Travelers payment essentially mirrored the evidence presented at the first trial." *Id.* "Macheca acknowledged receiving the Travelers payment and accounted for it when calculating its overall losses." *Id.* After judgment was entered in the second trial, Macheca moved "to reverse the improper deduction from Plaintiffs' damages of the amount paid by Travelers Insurance to the Plaintiffs." *Id.* at 1192-93.

The Eighth Circuit was not impressed with Macheca's argument and noted that the district court was perturbed by the obvious change in Macheca's position:

> With respect to Macheca's argument about the allegedly improper reduction of damages based on the Travelers payment, the district court said Macheca's position is "contrary to the position that the Plaintiffs took at the earlier trial, which is that Plaintiffs were not entitled to and were not seeking to recover damages that included any amount that Travelers already paid. So I don't understand why you are taking a 180–degree different position today."

> *Id.* at 1193.  Appropriately relying on the law of the case doctrine, the Eighth Circuit rejected Macheca's appeal:All of Macheca's claims regarding the Travelers payment… are governed by the same principle: under the law-of-the-case doctrine, Macheca is barred from claiming the Travelers payment should not reduce its damages because that issue was decided during the first trial and Macheca did not appeal it.

*Id.* at 1194 (citations omitted).

The application of the law of the case doctrine in *Macheca* was based on an issue that was expressly decided by the district court, expressly acknowledged and accepted by Macheca in both the first and second trials, and not appealed by Macheca in its first appeal to the Eighth Circuit. In this case, the State Defendants' attempt to twist the holding of *Macheca* to mean that the Court's and CFSD's recognition of the State's interest in responding to a motion involving the constitutional challenge of a state statute somehow operated to reinstate full party status to the

State for the purpose of terminating a consent decree to which it was never a party distorts *Macheca*'s holding beyond recognition.

The State Defendants next argue that their "status as proper parties to challenge the scope of the Consent Decree has been established by the fact that the Eighth Circuit accepted their appeal in the *Junction City* case (*United States v. Junction City Sch. Dist.*, 14 F.4th 658 (8th Cir. 2021)), and that CFSD did not challenge their status as appellants in that case. They rely on *Marino v. Ortiz*, 44 U.S. 301, 304 (1988) for the proposition "that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." State's Brief, p. 6. The State Defendants argue that "Camden-Fairview did not challenge, nor did the Eighth Circuit question, the State Defendants' status as proper parties to appeal this Court's modification orders," so the question of the State Defendants' status as proper parties "was decided implicitly" in that appeal.

One problem with the State Defendants' argument is that neither Camden-Fairview nor the Eighth Circuit Court of Appeals had reason to question the Arkansas Department of Education's and the State Board of Education's status as a proper party to appeal this Court's January 17, 2019 decision for several reasons. First, as discussed above (pp. 3-4), the State Defendants had the right to participate in the 2018 phase of this case because CFSD was challenging the constitutionality of a state statute. Second, the appeal was a consolidation of four school districts' cases, and ADE and SBE had been granted limited intervention in the *Junction City*, *Davis*, and *Turner* cases. *See, e.g. U.S. v. Junction City Sch. Dist. No. 75*, 361 F. Supp. 3d 809, 814 (W.D. Ark. 2019) ("On June 21, 2018, the ADE and SBE filed a motion to intervene in this case for the limited purpose of opposing Junction City's Motion for Declaratory Judgment.") This Court granted ADE and SBE's Motion to Intervene "for the limited purpose of opposing Junction City's motion for declaratory judgment. *Id.* Since ADE and SBE were intervenors in the *Junction City, Davis,* and *Turner* cases,

and arguably had a similarly limited role in this case, neither Camden-Fairview nor the Eighth Circuit Court of Appeals had a reason to question their status as proper parties to the subsequent appeal.

The State Defendants next argue that their "status as proper parties" was implicitly decided in the *Junction City* appeal, so "Camden-Fairview is thus precluded from challenging, and this Court is precluded from reconsidering, the State Defendants' party status on remand." The State Defendants cite this Court's decision in *Hiscox Dedicated Corp. Member Ltd. v. Taylor*, No. 6:18-CV-6100, 2023 WL 9427092, at *3 (W.D. Ark. December 28, 2023) for the proposition that a party which fails to litigate an issue that could have been presented during its first appeal effectively waives their right to continue to litigate that issue upon remand. The *Hiscox* case, like the other cases relied upon by the State Defendants, applied the law of the case doctrine to an issue which was actually litigated by the parties and decided by the Court.

Hiscox had issued an insurance policy to Suzan Taylor through its agent B&W. *Id.* at *2. Hiscox later rescinded the policy because Taylor made a misrepresentation on her application for the policy. *Id.* Taylor argued that Hiscox was estopped from rescinding the policy because its agent, B&W, had knowledge of the misrepresentation. *Id.* The Court dismissed Taylor's claims against B&W and later granted Hiscox summary judgment against Taylor. *Id.* at *10-*11.

Taylor appealed the summary judgment, but "did not present the Court's dismissal of her claims against B&W as an issue during her appeal for the Eighth Circuit." *Id.* at *11. Taylor had therefore "waived her right to challenge the Court's dismissal of her claims against B&W upon remand from the Eighth Circuit." *Id.* This is another example of the application of law of the case doctrine to issues which were actually decided by a court, not to an issue like the State Defendants'

status as a party to the *Junction City* appeal extending to make them parties for any and all other purposes, which was never addressed by any court.

The State Defendants conclude their brief by arguing that there are three reasons that the fact that the State Defendants have been dismissed from this case is "irrelevant". State's Brief, p. 7. They first argue that, although they were dismissed long before the Eighth Circuit's decision in *Junction City*, their appearance as appellants in that case did not give the Eighth Circuit "pause in considering whether the parties were properly before it." *Id*. As explained above, nothing about their participation in that appeal would have given either the Eighth Circuit or Camden-Fairview reason for pause.

The State Defendants' second argument is that Camden-Fairview was also dismissed in 2002, but the Court continues to recognize Camden-Fairview as a proper party. The difference between the State Defendants and Camden-Fairview is that the Court retained jurisdiction to enforce its 2002 order, which referenced paragraph 1(C) of the November 27, 1990 consent order between Camden-Fairview and the Harmony Grove school districts, who were the only parties that had continuing obligations under either of those orders.  As a practical matter then, the Court retained jurisdiction over Camden-Fairview, but not the State Defendants, whose only remaining obligation was to pay money, which they did.

The State Defendants' third and final argument is that, despite being "dismissed", they "remain bound by the Court's Consent Decree's terms and subject to this Court's jurisdiction to enforce them." State's Brief, p. 7. They cite *W. Thrift & Loan Corp. v. Rucci*, 812 F.3d 722, 724 (8th Cir. 2016) for the proposition that where a district court expressly reserves jurisdiction to enforce a settlement agreement, the district court has jurisdiction to enforce the agreement. State's Brief, p. 7. While that statement of law is correct, there are several problems with the State

Defendants' argument.  First, the parties with respect to which the Court retained jurisdiction were the Camden-Fairview School District and the Harmony Grove School District. Those were the parties that had continuing obligations under the 1990 Consent Decree. The State's obligation was discharged when it paid the amounts required by the 2002 Consent Decree. Second, just because the Court retained jurisdiction to enforce the 2002 Consent Decree doesn't compel the conclusion that the State Defendants continued to be parties to the case after they were expressly dismissed. Finally, even if the possibility exists that the 2002 Consent Decree could now be enforced against the State Defendants, that doesn't necessarily make them parties with standing to challenge the terms of the 1990 consent order which imposed no legal burdens on them, or the 2010 order entered in *Lancaster*, a case to which they were not a party.

While the issue of whether the State Defendants continue to be parties for all purposes, including whether claims for failing to eliminate vestiges of segregation may once again be asserted against them, should be conclusively resolved, the resolution of that issue won't get the State Defendants where they want to be. Even if the State Defendants could leverage the law of the case doctrine to show that they are nominally "parties" to this case, they cannot overcome the bigger hurdle of standing. In order to assert a claim in a lawsuit, a Defendant must show that it has standing. *See*, e.g., *Wilmington Sav. Fund Soc'y v. Lewis,* 2022 U.S. Dist. LEXIS 77350 (E.D. Ark. 2022) ("Defendant contends that Plaintiff does not have standing to bring this lawsuit. To the contrary, Defendant is the party without standing to contest the validity of the mortgage assignments in this case."); *United States v. Petters*, 2016 U.S. Dist. LEXIS 102523 (D. Minn. 2016) ("Vennes' interest in the assets to be distributed under the Asset Distribution Plan ceased when the Court approved the Plan. As a result, Vennes lacks standing to monitor the execution of the plan or to seek a public accounting or report.").

The State Defendants assert that they are parties to this case in order to "seek to terminate the provision in the 1990 Consent Order which creates a restriction on the transfer of white children from CFSD to Harmony Grove School District." Order, March 29, 2024, Doc. 355, pp. 1-2. For the reasons recently set out by this court in three cases with similar standing issues, the State Defendants lack Article III standing to pursue this claim. *See Kemp v. Beasley*, 2024 U.S. Dist. LEXIS 58599 (W.D. Ark. 2024) (Court denied ADE and SBE motion to intervene because they lacked Article III standing to seek a declaration that the school district has achieved unitary status or, in the alternative, to vacate a previous court desegregation order); *Turner v. Lewisville Sch. Dist. No. 1*, 2024 U.S. Dist. LEXIS 58601 (W.D. Ark. 2024) (same); *Davis v. Franks*, 2024 U.S. Dist. LEXIS 58600 (W.D. Ark. 2024) (same).

The Eighth Circuit Court of Appeals has agreed with CFSD's position that the law of the case doctrine applies to matters actually decided and not to issues which were "never contested." *Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.*, 660 F.2d 712, 717 n. 6 (8th Cir. 1981). The defendant in the *Mizokami* case, Mobay, had argued that the lower courts' "determination to dismiss, rather than to transfer, inherently, and necessarily was a determination that this action is not maintainable in any federal district court of the United States." *Id.* The Eighth Circuit found, however, that the record of the "proceedings gives no indication that the possibility of a transfer was ever considered by either the parties or the court" and, consequently, "decline[d] to imply broad res judicata or law of the case effect from a matter never contested." *Id.*

Similarly, in *United States v. 2035, Inc.*, 2017 U.S. Dist. LEXIS 196598 (D.S.D.  2017), the district court held that in order for the law of the case doctrine to apply, a matter "must actually have been decided by this court or by the Eighth Circuit." The South Dakota District Court cited *Wright & Miller* for the proposition that, "Actual decision of an issue is required to establish the

law of the case.  Law of the case does not reach a matter that was not decided." *Id.*, *citing* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (2d ed. 2002).

### *Conclusion*

The law of the case doctrine does not establish the State Defendants' status as parties to this case. Even if the State Defendants could show that they are nominally "parties", they do not have standing to challenge the 1990 Consent Order, as modified and extended, or this Court's continuing supervision of the Harmony Grove and Camden-Fairview School Districts.

Respectfully submitted,

Whitney F. Moore (Ark. Bar No. 2009193)
WHITNEY F. MOORE, P.A.
23 Huntington Road
Little Rock, AR 72227
Telephone: (870) 818-5490
Email: whitney@aprobertslaw.com

– AND –

Christopher Heller (Ark. Bar No. 81083)
FRIDAY, ELDREDGE & CLARK
400 West Capitol, Suite 2100
Little Rock, Arkansas 72201 3493
Telephone:  (501) 370-1506
Email:      heller@fridayfirm.com

*Attorneys for Defendant Camden-Fairview School District*