IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LARRY MILTON, *et al.* PLAINTIFFS

v. Case No. 1:88-cv-1142

MIKE HUCKABEE, *et al.* DEFENDANTS

and

DOUGLAS LANCASTER, *et al.* PLAINTIFFS

v. Case No. 1:09-cv-1056

DR. JERRY GUESS, *et al.* DEFENDANTS

**ORDER**

Before the Court is a Renewed Motion to Terminate Continued Supervision or for Alternative Relief filed by the State Defendants.[1] ECF No. 373. Defendant Harmony Grove School District ("HGSD") has filed a Notice of Adoption, in which it adopts and incorporates by reference the State Defendants' motion. ECF No. 375. Defendant Camden Fairview School District ("CFSC") has filed a response in opposition to the motion. ECF No. 378. Plaintiffs in *Milton v. Huckabee, et al.*, Case No. 1:88-cv-1142, have filed a response noting its adoption of CFSC's response. ECF No. 380. The State Defendants have filed a reply. ECF No. 385. The Court finds that the matter is ripe for consideration.

**I. BACKGROUND**

This action was initiated in 1988 by a group of black parents ("Plaintiffs") on behalf of

[1]The State Defendants are the state officials and entities who were named as Defendants in the original litigation and include the Governor of Arkansas, the Director of the Arkansas Department of Education, and the members of the Arkansas Board of Education.

their minor children who were students in the Camden, Fairview, and Harmony Grove School Districts in Ouachita County, Arkansas. *Milton, et al. v. Huckabee, et al.*, Case No. 1:88-cv-1142 (W.D. Ark. Dec. 16, 1988). Plaintiffs sued the State Defendants, the school districts, and other municipal defendants, seeking consolidation of the three school districts. ECF No. 1.[2]

Plaintiffs alleged certain violations of the Voting Rights Act and other federal constitutional violations. ECF No. 254, p. 2. Plaintiffs alleged that the defendants in the lawsuit operated a racially dual education system in Ouachita County, Arkansas, and the defendants failed to dismantle the dual system. ECF No. 254, p. 2. Plaintiffs claimed that the City of Camden "contained two separate school districts with one, the former Fairview School District, being predominantly white, and the other, the former Camden School District, being predominantly black." ECF No. 254, pp. 2-3. Plaintiffs further alleged that "the adjoining rural school district, [HGSD], was predominantly white and served as an additional white flight retreat for white persons seeking to avoid the predominantly black Camden School District." ECF No. 254, p. 3.

**A. The 1990 Consent Order (*Milton*)**

"The desegregation issues [in the *Milton* lawsuit] were resolved by consolidation of the Fairview School District and Camden School District into the Camden Fairview School District." ECF No. 254, p. 6. In 1990, the Court entered a consent order that, in part, prohibited Harmony Grove from accepting the transfer of white students from CFSD without CFSD's consent. ECF No. 262-1, p. 2. Paragraph I.C. of the 1990 Consent Decree stated:

> Harmony Grove shall maintain an open admission policy in regard to non-resident black students. Harmony Grove shall not permit the transfer of white students from Fairview into the district without the written permission of Fairview. Acceptance of transfer students by Harmony Grove is subject to existing space and transfer limitations. Harmony Grove will also refrain from engaging in any other act or conduct tending directly or indirectly to

[2]The ECF numbers in this Order refer to the ECF Numbers in *Milton*, *et al. v. Huckabee, et al.*, Case No. 1:88-cv-1142.

> have a segregative impact in the Fairview School District. Any student transferring to Harmony Grove in compliance with this order and other legal requirements will be immediately eligible for all school activities without any of the limitations imposed by A.C.A. § 6-18-206.

ECF No. 262-1, p. 2. The "principal issues" in the *Milton* lawsuit were resolved by a series of settlement agreements that culminated in a final consent order entered August 1, 1991. Even though a final consent order was entered, any terms in the previous 1990 consent that did not conflict with the final consent order remained in effect.

**B. The 2001 Settlement and 2002 Consent Order (*Milton*)**

In 2001, a Settlement Agreement was reached by Plaintiffs, the State of Arkansas, the Arkansas Department of Education, CFSD, HGSD, the City of Camden, and the Housing Authority of Camden. ECF No. 254, pp. 4-14. The Settlement Agreement stated that CFSD "believe[d] that it has attained unitary status" and further stated that HGSD "desires an end to the CFSD desegregation suit and to its continuing obligations" in the lawsuit. ECF No. 254, p. 5. The Settlement Agreement further stated that the "parties agree that the consolidated CFSD is desegregated and has achieved unitary status" and "submit they are entitled to a final order of unitary status, which immediately terminates court supervision of this case and dismisses this case with prejudice as to all parties." ECF No. 254, p. 8. The Settlement Agreement declared that "[t]his agreement will terminate on July 1, 2008, and the parties will have no further obligations under the agreement or any previous agreement or orders entered with this court after the termination date of July 1, 2008." ECF No. 254, p. 13. The Settlement Agreement could "not be modified or altered except by a writing executed by the authorized representatives of each of the parties" and that the Court "shall have jurisdiction to enforce this agreement to resolve disputes between the parties arising out of this agreement and to hear any challenge to the legality of this agreement." ECF No. 254, p. 13.

In 2002, the Court entered a consent order that incorporated the terms and conditions of the Settlement Agreement. ECF No. 254. The consent order declared CFSD unitary and dismissed with prejudice all Defendants from the case, including the State Defendants, CFSD, and HGSD. ECF No. 254, pp. 2, 8. Despite the declaration that CFSD had achieved unitary status, paragraph 10 of the 2002 consent order stated that paragraph I.C. of the 1990 consent order, which prevented transfers of white students from CFSD to HGSD "remain[ed] in full force and effect to prevent future 'white flight' from CFSD to HGSD." ECF No. 254, p. 9. The 2002 consent order also prevented white children of HGSD employees who resided in in the CFSD from attending HGSD without CFSD's permission. ECF No. 254, pp. 9-10.

**C. The 2010 Consent Order (*Lancaster*)**

In 2010, to resolve a lawsuit challenging a CFSD student's transfer denial (*Lancaster, et al. v. Guess, et al.*, Case No. 1:09-cv-1056 (W.D. Ark. Dec. 14, 2009)), the Court entered a consent order based on the parties' settlement agreement. The 2010 *Lancaster* consent order modified the 2002 *Milton* consent order and required that CFSD obtain approval from this Court prior to granting consent for children of HGSD employees who reside in CFSD to attend HGSD. ECF No. 262-5. Because the complaint in *Lancaster* had "raised issues related to the remedial desegregation provisions established and applied to . . . [CFSD] and HGSD . . . [in *Milton*]," the Court, upon motion by CFSD, added HGSD as a party to the *Lancaster* case. ECF No. 262-5, p. 1.

In this consent order, the Court declared that the provisions of paragraph I.C. of the 1990 consent order and paragraph 10 of the 2002 consent order preventing transfers of white students from CFSD to HGSD "remain[ed] in full force and effect." ECF No. 262-5, p. 1-2. Further, the Court "retained jurisdiction solely for the purpose of enforcing the parties' settlement agreement" and the consent orders in both *Milton* and *Lancaster*. ECF No. 262-5, p. 2. The Court did not

acknowledge the 2008 termination date stated in the 2002 *Milton* consent order.

**D. School Choice Laws**

When the 2002 *Milton* consent order and 2010 *Lancaster* consent order were entered, the white-student transfer ban contained in those orders was not wholly inconsistent with the Arkansas Public School Choice Act of 1989 ("the 1989 Act"), which prohibited "transfer[s] to a nonresident district" if "the percentage of enrollment for the student's race [at the nonresident district] exceed[ed] that percentage in his resident district." Act 609 of 1989, § 11(a). The 1989 Act, however, was declared unconstitutional because it violated the Equal Protection Clause. *Teague ex rel. Teague v. Ark. Bd. of Educ.*, 873 F. Supp. 2d 1055, 1068 (W.D. Ark. 2012), *vacated sub nom as moot Teague ex rel. Teague v. Cooper*, 720 F.3d 973, 979 (8th Cir. 2013). In 2013, the state legislature repealed the 1989 Act in its entirety and replaced it with the Public School Choice Act of 2013, codified at Ark. Code Ann. § 16-18-1901 *et seq,* which contained a "broad school choice transfer option" without the "categorical race-based limitation." *Teague*, 720 F.3d at 975.

Arkansas now has enacted a public school choice program that "allows students to attend any resident school or nonresident district," subject to certain limitations such as a lack of capacity at the student's school district of choice. Ark. Code Ann. § 6-18-1903(b)-(c). The Arkansas Department of Education has granted CFSD a partial exemption from participation in school choice based on the 1990 consent order, which restricted the transfer of white students from CFSD to HGSD.

**E. Modification of the Consent Orders (2019)**

In 2019, following significant changes to Arkansas's school choice laws, the Court modified the *Milton* and *Lancaster* consent orders to prohibit resident students from transferring from CFSD to "any school district" (not just HGSD) where "percentage of enrollment for the

transferring student's race exceeds that percentage in the student's resident district" unless certain requirements are met, such as approval by CFSD's board. ECF No. 307. This modification would have allowed CFSD to wholly exempt itself from school choice. However, the modification order (ECF No. 307) was reversed by the Court of Appeals for the Eighth Circuit, and the modification is no longer in effect. *See United States v. Junction City Sch. Dist.*, 14 F.4th 658, 668 (8th Cir. 2021). With respect to the *Milton* and *Lancaster* consent orders, the Eighth Circuit found that "the only provision still in effect today is a consent provision prohibiting transfers to [HGSD]." *Junction City*, 14 F.4th at 668. For more than a decade, the parties and Court have operated with the understanding that this consent provision remained in effect.

The State Defendants and HGSD's now move the Court to terminate continued supervision of CFSD and its jurisdiction over the consent orders. Plaintiffs and CFSD oppose the motion.

## II. LEGAL STANDARD

"A constitutional violator seeking relief from a desegregation plan adopted as a consent decree must show that it 'complied in good faith with the desegregation decree since it was entered' and that 'the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'" *Little Rock Sch. Dist. v. Arkansas*, 664 F.3d 738, 744 (8th Cir. 2011) (quoting *Freeman v. Pitts*, 503 U.S. 467, 492 (1992). In deciding a motion under Federal Rule of Civil Procedure 60(b) to terminate jurisdiction over a consent decree, a district court should consider the following factors:

> (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and (6) the continuing efficacy of the consent decree's enforcement.

*Cody v. Hillard*, 139 F.3d 1197, 1199 (8th Cir. 1998); *see also Bd. of Educ. v. Dowell*, 498 U.S. 237, 247 (1991) (stating if district court finds that the defendant is operating in compliance with

the Constitution and is unlikely to return to "its former ways," the purposes of the injunction have been achieved). Courts must be mindful that "federal supervision of local school systems was intended as a temporary measure to remedy past discrimination." *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) (quoting *Dowell*, 498 U.S. at 247).

## III. DISCUSSION

The State Defendants and HGSD argue that, under *Cody*, the Court should terminate continued supervision over CFSD and its jurisdiction over the consent orders.

### A. Standing

As a preliminary issue, the Court will address the issue of standing, which the Court asked the parties to brief—specifically, whether the State Defendants have standing to file the instant motion after being dismissed as parties to this case. After the parties were asked to address the issue of standing, HGSD filed a Notice of Adoption, in which HGSD "adopts and incorporates by reference State Defendants' Renewed Motion to Terminate Continued Supervision or for Alternative Relief and Memorandum Brief in Support (ECF Docs. 373-374) . . . ." The issue of whether HGSD has standing to bring the instant motion is not at issue, and thus the Court is satisfied that the instant motion is properly before the Court. Further, even if the Court were to consider the issue of standing as to the State Defendants, the Court would determine that the State Defendants had standing to bring the instant motion given that the State of Arkansas was a party to the 2001 *Milton* settlement agreement, which is currently in dispute.

### B. Specific Terms of Consent Order

The first *Cody* factor directs Courts to look at the "specific terms providing for continued supervision and jurisdiction over the consent decree." *Cody*, 139 F.3d at 1199. The 2002 *Milton* consent order stated that the "agreement will terminate on July 1, 2008, and the parties will have

no further obligations under this agreement or any previous agreement or orders entered with this court after the termination date of July 1, 2008. ECF No. 254, p. 13. Further, the order stated that it could "not be modified or amended" without "the express written approval of all the parties to the agreement." ECF No. 254, p. 13.

The 2010 *Lancaster* consent order did not acknowledge the 2008 termination date and confusingly stated that the white-student transfer restriction "remain[ed] in full force and effect at this time." ECF No. 262-5, p. 2. However, according to the plain language of the 2002 *Milton* consent order, the white-student transfer restriction terminated in 2008. The modification in *Lancaster* that extended the white-student transfer restriction past 2008 should have never taken effect, because not all parties agreed to the modification to extend the white-student transfer ban. Specifically, the State of Arkansas did not agree to the modification. Accordingly, considering the 2002 *Milton* consent order's specific terms, the Court finds that this factor weighs in favor of terminating the consent decrees.

CFSD argues that the general principle of waiver prevents the State Defendants from arguing, for the first time in the instant motion, that the white-student transfer restriction in the 2002 *Milton* consent order should have terminated in 2008. According to CFSD, for more than a decade, the State Defendants accepted CFSD and HGSD's interpretation that the white-student transfer restriction remained in effect after 2008, and thus that "interpretation remained controlling under the ordinary principles of contract law." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 451 F.3d 528, 536 (8th Cir. 2006). Even if CFSD and HGSD's interpretation became controlling under general contract principles, the Court is hesitant to find that the state Defendants and HGSD have waived or abandoned its objection to that interpretation. "Under Arkansas law, waiver is the 'voluntary abandonment or surrender by a capable person of a right known by him to exist, with

the intent that he shall forever be deprived of its benefits.'" *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 853 (8th Cir. 2014). Considering the lengthy nature of the litigation between the parties and the fact that this is not an ordinary contract dispute between private parties, the Court is not persuaded that the State Defendants and HGSD knowingly and intentionally abandoned its right to rely on the plain language of the 2001 *Milton* settlement agreement, which was incorporated into the 2002 *Milton* consent order. *See Little Rock Sch. Dist.*, 451 at 539 (refusing to reverse the district court's ruling that a party had abandoned it objection to the Little Rock School District's interpretation of its compliance plan, reasoning that the case was a desegregation case with a lengthy history and that the interpretation dispute was not between private litigants).

CFSD also argues that the law-of-the-case doctrine applies to preclude the State Defendants and HGSD from arguing that the white-student transfer restriction should have ended in 2008. This doctrine "prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings . . ." *Thompson v. C.I.R.*, 821 F.3d 1008, 1011 (8th Cir. 2016) (quoting *Klein v. Arkoma Prod. Co*., 821 F.3d 1008, 1011 (8th Cir. 2016). However, CFSD has not identified any Eighth Circuit or district court decision that addressed the 2008 termination language in the 2002 *Milton* consent order. Thus, the Court finds that the law-of-the-case doctrine does not apply.

**C. The Consent Order's Underlying Goals**

Under the second *Cody* factor, the Court considers the consent order's underlying goals. The primary underlying goal of the 1990 *Milton* consent order was to prevent CFSD and HGSD from engaging in conduct that had a segregative impact in either school district. ECF No. 262-1, pp. 2-3. After the Court entered the 1990 consent order, however, the parties agreed that the consolidation of the Camden and Fairview School Districts resolved the *de jure* segregation issues

related to the "racially dual system of education that formerly existed in the Fairview and Camden School Districts." ECF No. 254, pp. 3, 7.

The stated goal of the 2002 *Milton* consent order—more specifically, the primary goal of the white-student transfer restriction—was to "prevent future 'white flight' from CFSD to HGSD. ECF No. 254, p. 9. This goal of preventing white flight was also incorporated into the 2010 *Milton* consent order. ECF No. 262-5, p. 2 (stating that the white-student transfer restriction set forth in paragraph 10 of the February 1, 2002 order remains in "full force and effect"). While white flight to Harmony Grove has been an issue from the beginning of this lawsuit, it was a concern that existed together with the *de jure* segregation issues, which have now been resolved. Thus, it appears that the white-student transfer restriction in the 2002 *Milton* consent order and subsequent *Lancaster* consent order is not directed at remedying *de jure* discrimination or any state action. Instead, the white-student transfer restriction addresses the anticipated problem of white flight caused by the future actions or choices of parents. This purpose, by itself, is beyond the Court's power to regulate. *See Freeman v. Pitts*, 503 U.S. 467, 495 (1992) (noting that "[w]here resegregation is a product not of state action but of private choices, it does not have constitutional implications"). Any white flight issues that exist today regarding transfers from CFSD to HGSD are not tied to unconstitutional state action. Accordingly, the Court finds that the underlying goals of the consent orders—specifically, the 2002 *Milton* and 2010 *Lancaster* consent orders—weigh in favor of terminating the consent orders.

**D. Good Faith Compliance with Prior Court Orders**

Under the third and fourth *Cody* factors, the Court considers whether there has been compliance with prior court orders and whether the parties have made a good faith effort to comply. There is no evidence to suggest that the parties have failed to comply with any prior

consent orders. In the 2002 *Milton* consent order, the parties "agree[d] that the settlement agreements and consent orders previously entered by this Court have been fully complied with and the racially dual system of education that formerly existed in the Fairview and Camden School Districts has been dismantled and eliminated." ECF No. 254, p. 7. While CFSD states that it is "prepared to prove that HGSD has not acted in good faith at all times since the 1989 Act was replaced and the current school choice scheme was enacted," CFSD does not offer any specific information. Accordingly, the Court finds that the parties' good faith compliance with prior court orders weighs in favor of terminating the consent orders.

**E. Length of Time Consent Order Has Been in Effect**

Under the fourth *Cody* factor, the Court considers the length of time the consent order has been in effect. Various consent orders have been issued in this lawsuit since 1988, but the only provision that remains in effect today is the consent provision restricting white-student transfers to HGSD. Thus, the only party that has any remaining obligations under the consent orders is HGSD. HGSD has agreed to "maintain an open admission policy for non-resident black students" and refuse the "transfer of white students from" CFSD without its permission. ECF No. 262-1, p. 2. Further, HGSD has agreed to "refrain from engaging in any other . . . conduct tending . . . to have a segregative impact in the [CFSD]." ECF No. 262-1, p. 2. These obligations have been in place since the 1990 *Milton* consent order, over thirty-five years ago, even though it appears the parties' intention was for the white-student transfer restriction to end in 2008. Given the thirty-five-year history of the Court finding that the parties have complied with the various orders entered in this case, the Court finds that this *Cody* factor weighs in favor of terminating the consent orders.

**F. Continuing Efficacy of the Consent Decree's Enforcement**

Under the sixth and final *Cody* factor, the Court considers the continuing efficacy of the

consent orders' enforcement. Arkansas has chosen school choice as a state policy, and this policy weakens the efficacy of the 2002 *Milton* and 2010 *Lancaster* orders to prevent white flight from CFSD. CFSD students now have and "do exercise" options for transferring to other neighboring school districts. CFSD students are allowed to transfer to any school district, such as the neighboring Smackover School District, except that white students are not allowed to transfer to HGSD. Thus, the Court questions the continuing efficacy of the white-student transfer restriction to prevent white flight when all students are now free to transfer to any school district. Accordingly, Court finds that the continuing efficacy of the consent orders' enforcement weighs in favor of terminating the consent orders.

The Court finds that all six *Cody* factors weigh in favor of terminating the consent orders, that all parties have complied in good faith with the 2002 *Milton* consent order and 2010 *Lancaster* consent order since they were entered, and that the vestiges of past discrimination have been eliminated to the extent practicable. Accordingly, the Court finds that termination of the consent decrees is appropriate.

## IV. CONCLUSION

For the above-discussed reasons, the Court finds that the Renewed Motion to Terminate Continued Supervision or for Alternative Relief (ECF No. 373) should be and hereby is **GRANTED**. The Court terminates its continued supervision over CFSD and its jurisdiction over the 2002 *Milton* consent order and the 2010 *Lancaster* consent order.

**IT IS SO ORDERED**, this 30th day September, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge